UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYLVESTER BONNER, JR., ) | |
| ) | |
| Plaintiff, ) | Case. No. 12 C 981 |
| v. ) | |
| ) | Judge John J. Tharp, Jr. |
| DANIEL O'TOOLE, et al., ) | |
| ) | Magistrate Judge Arlander Keys |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

On February 12, 2010, City of Chicago Police Officers entered the home of Sylvester Bonner, Jr., who lived at the time at 4929 W. Adams, in the basement apartment designated unit BA. The officers had a warrant, but – as it turned out – not for Mr. Bonner's unit; the warrant covered the "entire 1st floor of the three flat building located at 4929 W. Adams." According to Mr. Bonner, the building at that address is not a three flat, but is a larger residential apartment building with four floors and at least 30 units.

On February 12, 2012, Mr. Bonner sued the City and the officers who entered his apartment, including Officer Daniel O'Toole, alleging violation of his Fourth and Fourteenth Amendment rights. He also raises a *Monell* claim, *see Monell v. Department of Social Services*, 436 U.S. 658 (1978), alleging that the City failed to train its officers in the use of informants and maintains a code of silence that allows officers to obtain

warrants by using fraudulent information. He alleges that, as a result of the defendants' misconduct, he "sustained injuries, humiliation, and indignities, and suffered great mental and emotional pain and suffering all to his damage." Complaint, ¶25.

According to Mr. Bonner, the warrant at issue in this case had a number of irregularities: first, the address 4929 was written in and initialed over the typed address, which was 4927; second, the target of the warrant was a woman identified as "Shu-Shu" who, according to Mr. Bonner, lived at 4929 W. Adams but in the 1st floor unit (designated 1B), not the basement unit. Mr. Bonner alleges that the officers involved knew their information was unreliable, but nonetheless sought and obtained a search warrant, intentionally presenting false information to the judge to obtain that warrant. Complaint, ¶¶18-20. He alleges that, because of this, the entry and subsequent search of his home were illegal, in violation of the Fourth Amendment. He alleges that the defendant officers intentionally procured the search warrant with false information and that they intentionally executed the search warrant on the wrong apartment; he also alleges that, during the course of their illegal search of his home, the defendants illegally seized property belonging to him, including a computer, a cellphone, a surround sound system and other items. He has also sued the City of Chicago for indemnification.

The case was initially assigned to Judge Holderman, who

referred the case to this Court for discovery supervision; thereafter, the case was reassigned to Judge Tharp, who left the referral intact. Discovery proceeded, with both sides serving written discovery and pursuing depositions of various witnesses. Most relevant to today's decision, Mr. Bonner served requests seeking information and documents relating to warrants issued in the five years prior to the incident outlined in the complaint. And the City served contention interrogatories, documents requests and requests to admit. Per the Court's order, fact discovery was set to close on October 31, 2012.[1]

Two weeks before discovery closed, on October 17, 2012, Mr. Bonner filed a motion to compel the defendants to respond to certain outstanding discovery requests. Specifically, he asks the Court to order the City to turn over all documents relating to searches executed in the five years prior to the incident covered in the complaint in which defendant Daniel O'Toole was, in any way, involved. In that same motion, he also asks the Court to strike the defendants' requests to admit.

Two days before the fact discovery cutoff, the defendants followed suit with their own motions to compel. The City filed a motion seeking an order compelling Mr. Bonner to respond to a set of contention interrogatories and an accompanying document

---

[1] The Court has since extended the discovery cutoff to January 31, 2013.

3

request it served on Mr. Bonner on July 18, 2012. And Officer O'Toole filed a motion seeking an order compelling Mr. Bonner to respond to deposition questions relating to his mental health, or, in the alternative, to bar Mr. Bonner from claiming any damages related to his mental health status. The Court considers each of these motions below.

## Discussion

The federal discovery rules are liberal to further the parties' interest in preparing a case for trial or in settling their disputes in advance of trial. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("the scope of discovery should be broad in order to aid in the search for truth"). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450.

## Mr. Bonner's Motion to Compel

Mr. Bonner requested that the defendants produce documents

relating to search warrants executed by Officer O'Toole from January 1, 2005 through February 12, 2010. For each such warrant, he requested the warrants themselves, plus complaints for search warrants, search warrant data sheets, supplementary reports, raid activity summary reports, vice case reports and evidence recovery logs; in a subsequent request, Mr. Bonner added to the list of requested categories of documents arrest reports, photographs and all other reports.

In response to Mr. Bonner's discovery requests, the City and Officer O'Toole identified 349 searches during the relevant time period in which Officer O'Toole was somehow involved. Of those 349, Officer O'Toole was the affiant on just 45. The City has offered to produce documents during this period for searches in which Officer O'Toole was the affiant – 45 of the 349 searches. In fact, the City has produced more than 500 pages of documents relating to just those 45 searches, and it claims that the time and effort that have gone into producing documents for those 45 searches show just how burdensome responding to the full request would be. Officer O'Toole has produced over 300 pages of documents from his personal files, which are copies of documents relating to the warrants in which he was involved.

Mr. Bonner seeks to compel the City to produce documents and information relating to all 349 searches identified – even those on which Officer O'Toole served as security or backup; he argues

that he is entitled to documents and information even where Officer O'Toole clearly had no role in obtaining the actual warrant. The City and Officer O'Toole both argue that producing discovery on the remaining 304 searches would be burdensome and unreasonable, given any possible relevance.

In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). As with all discovery matters, district courts have broad discretion in determining motions to compel. *See Peals v. Terre Haute Police Dept.*, 535 F.2d 621, 629 (7th Cir. 2008); *Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007).

Mindful that discovery should be liberally permitted, the Court nonetheless finds, based upon the allegations in the Complaint, that the City should not be required to produce discovery relating to search warrants where Officer O'Toole was not the affiant, did not himself seek and obtain the warrant at issue. The Court does not see – and Mr. Bonner has not explained – how such discovery is relevant to the claims alleged in this lawsuit. In response to the defendants' relevance argument, Mr. Bonner simply asserts that discovery should be broad and that the

defendants should not be permitted unilaterally to determine what is and what is not relevant. Both of those assertions are true. But they do nothing to establish the relevance of the documents requested.

Moreover, the affidavit of Commander James O'Grady demonstrates that requiring the City to retrieve and produce the requested information on the remaining 304 searches would be unduly burdensome. Accordingly, Mr. Bonner's motion to compel is denied. Mr. Bonner is entitled to the information requested on the 45 searches on which Officer O'Toole was the affiant, however, and, to the extent the City has not already done so, it will immediately provide to Mr. Bonner all of the requested documents related to those warrants.

Mr. Bonner's Motion to Strike

Mr. Bonner also asks the Court to strike the City's requests to admit, arguing that the requests are both overly burdensome (numbered at 246) and inappropriate. Federal Rule of Civil Procedure 36, which governs requests for admission, provides that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." The Rule further provides that, such matters are admitted "unless, within 30 days

after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." The City served its requests to admit on October 1, 2012; Mr. Bonner still has not responded. Instead, he moved to strike the requests.

"Requests to admit aid the court and the parties by limiting and refining the claims that will be asserted at trial"; "[a]s such, they are generally quite important in resolving issues." *BP Amoco Chemical Co. v. Flint Hills Resources*, No. 05 C 5661, 2008 WL 4542738 at *1 (N.D. Ill. June 11, 2008)(citing *Taborn v. Unknown Officers*, No. 00 C 652, 2001 WL 138908, at *1 (N.D. Ill. Feb. 16, 2001)). "No presumptive limit has ever been set on the number of requests a party can propound"; instead, "lines have been drawn on a case-by-case basis, depending on the complexity of the case and whether or not the propounding party is truly seeking admissions or seeking to circumvent the Federal Rules regarding discovery." *Id.* (citations omitted). Having said that, the Court "must limit the frequency or extent of discovery . . . if it determines that (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs Of

the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

Here, the requests to admit were served on October 1, 2012 – 30 days before fact discovery was set to close. They asked Mr. Bonner to admit, as of that date, that he had disclosed no documents or witnesses to support his various claims, that he had no documents or witnesses to support his various claims and that he had no other evidence to support his various claims or the elements thereof. There is nothing inappropriate about such requests. These are facts. Although that number seems high, Mr. Bonner's complaint contains several *Monell* claims, each consisting of multiple allegations and sub-allegations, and the requests to admit track those parts and sub-parts. Thus, the number itself is not particularly shocking.

Additionally, although Mr. Bonner argues that he was precluded from disclosing such documents and witnesses because of the defendants' failure to provide them, he could have answered in the affirmative and reserved the right to supplement based upon what the defendants provided in discovery. By October 1, 2012, with the discovery cutoff fast approaching, the defendants had the right to test the waters on the issue, to be sure that they were aware of the universe of documents and witnesses upon

9

which Mr. Bonner would rely to pursue his claims. And, certainly, there was nothing onerous about the requests – they required no additional research or investigation on Mr. Bonner's part. Accordingly, the Court declines to strike the City's requests for admission.

The City of Chicago's Motion to Compel

As explained above, the City seeks an order compelling Mr. Bonner to respond to contention interrogatories it served on July 18, 2012. A contention interrogatory allows a party to learn the factual bases of the opposing party's claims and defenses. *See Pratt v. Tarr,* 464 F.3d 730, 733 (7th Cir. 2006). Rule 33 provides that interrogatories "may relate to any matter than may be inquired into under Rule 26(b)" and that an interrogatory "is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ." Fed. R. Civ. P. 33(a)(2). Rule 33 does not allow interrogatories that ask for purely legal conclusions, however. *See Nautilus Ins. Co. v. Raatz,* No. 08 C 6182, 2011 WL 98843, at *5 (N.D. Ill. Jan.12, 2011); 8B Fed. Prac. & Proc. Civ. § 2167.

The City's interrogatories relate to the allegations that form the basis of Mr. Bonner's *Monell* claims. They ask Mr. Bonner to spell out, with specificity, the allegations concerning the misconduct referenced in his complaint, as well as the evidence he has to support those allegations. In response to the

10

City's motion, Mr. Bonner claims that the City is hoarding information and evidence, and then faulting him for failing to tell it what that evidence is. But that is simply not the case. First, it is clear that the City and Office O'Toole have produced myriad documents relating to searches and warrants for which Officer O'Toole was the affiant. Second, the Court does not see – and Mr. Bonner has not explained – how the evidence he seeks (which, as explained above, he's not going to get) would further his *Monell* claims. And, finally, even if that evidence did do what Mr. Bonner claims it would, he should still have provided some form of an answer within the limits established by the rules and by agreement of the parties – even if that answer simply outlined his objections to the contention interrogatories. By doing nothing, he has waived his right to object.

In his response to the motion, Mr. Bonner claims that, in the documents produced to date, he has been able to detect patterns that would, in fact, support his *Monell* claims. If that is indeed the case, responding to the relevant interrogatories should be a simple matter. Yet he has, to date, declined to respond to the City's discovery. He is ordered to do so now.

<u>Officer O'Toole's Motion to Compel</u>

At his deposition, Mr. Bonner refused, on the advice of his attorney, to answer certain questions. Officer O'Toole filed a motion to compel, asking the Court to order Mr. Bonner: to sit

11

for deposition again; to provide answers to the questions posed relating to the state of his mental health; and to reimburse him for the costs of the second deposition. Rather than file a direct response to Officer O'Toole's motion, counsel for Mr. Bonner filed a motion to terminate or limit Mr. Bonner's deposition pursuant to Rule 30(d)(3), which Officer O'Toole has moved to strike.

During his deposition, counsel for Officer O'Toole asked Mr. Bonner about his mental health issues. Mr. Bonner testified that he saw both a therapist and a psychiatrist; additionally, he testified, as part of a larger line of questioning, that he discussed relationship issues with those professionals (Dr. Williams and Dr. Jennings) both before and after the incident covered in the Complaint, and that part of his care with those doctors was related to his relationship issues. Bonner Dep., pp. 182-183. He testified that, at the time of his deposition, he was not in a relationship, Bonner Dep., p. 180. But, when counsel for Mr. O'Toole asked Mr. Bonner "[w]hen was the last time you were in a relationship?" his attorney instructed him not to answer. Bonner Dep., p. 180. Counsel for Mr. O'Toole asked "[have] you been in any relationships after February of 2010?"; again, his attorney instructed him not to answer. Bonner Dep., p. 182. Mr. Bonner testified that he was not in a relationship at the time of the incident, Bonner Dep., pp. 185-186. When

asked whether, in the last five years, he has ever been in a relationship, he answered "yes." *Id.*, p. 188. When asked whether, in the last five years he had ever discussed relationship issues with Dr. Williams, counsel instructed him not to answer. *Id.* Counsel indicated that she was unwilling to allow him to answer anything prior to February 12, 2010. *Id.*, p. 190.

Rule 33 provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." There is no claim of privilege here; nor has there been any relevant limitation ordered by the court. And, although counsel did file a motion under Rule 30(d)(3), she clearly had no intention of filing it when she instructed Mr. Bonner not to answer; indeed, the deposition occurred on October 11, 2012, and she didn't file her motion until December 5, 2012, (the very day her response to Officer O'Toole's motion to compel was due). Under the circumstances, counsel's instruction was inappropriate.

Moreover, the position she took at the deposition was untenable. Her client has alleged that the incident of February 12, 2010 exacerbated pre-existing issues (*see, e.g.,* Plaintiff's answer to Defendant O'Toole's interrogatory No. 10). And, as a result, as the definition of exacerbates makes clear, the

13

defendants are entitled to explore the state of affairs before the incident, so that they can compare that to the state of affairs after the incident. Given the damages claims, counsel was wrong to preclude this line of questioning. The Court might be inclined to limit this line of questioning if, as counsel suggests, the questions were truly invasive or designed to harass Mr. Bonner because of his sexual preference. But the record makes clear that that was not the case. The questions asked only about "relationships," without ever even hinting at the gender of the person involved, and they asked nothing about the specifics discussed with the doctors. There was simply no basis for counsel to limit the questions as she did.

In his complaint, Mr. Bonner has alleged that the incident he describes caused damages to his physical and mental health. By claiming damages relating to his mental health, Mr. Bonner has put the matter at issue. And, having opened the door, he cannot refuse to provide discovery on the topic; the defendants are entitled to explore the issue. Accordingly, the Court finds that he must answer the questions posed. Additionally, because counsel for Mr. Bonner inappropriately limited discovery, she is ordered to reimburse counsel for Officer O'Toole for the costs of reconvening Mr. Bonner's deposition, should he choose to do so.

## Conclusion

For the reasons set forth above, the Court denies Mr.

14

Bonner's Motion to Compel [#48]; grants the City's motion to compel [#57]; grants Officer O'Toole's motion to compel [#62]; and grants Officer O'Toole's motion to strike [#92]. Mr. Bonner's motion to terminate or limit his deposition [#88] is denied. Mr. Bonner is ordered to provide substantive responses to the City's interrogatories by January 10, 2013; any objections to those interrogatories are waived. Additionally, to the extent counsel for Officer O'Toole still wishes to pursue answers to the questions counsel barred (relating to relationship issues that played a role in his mental health treatment during the last five years), Mr. Bonner is directed to provide such answers; his attorney is ordered to reimburse counsel for the costs of deposing him a second time.

Dated: December 18, 2012

E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge