# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SYLVESTER BONNER, JR.,

      Plaintiff,

    v.

DANIEL O'TOOLE,

      Defendant.

No. 12 CV 981

Judge Manish S. Shah

## ORDER

Defendant O'Toole's motion for summary judgment on the conspiracy claim, [251] (briefed at [311], [322]), is granted. Plaintiff Bonner's cross-motion, [276] (briefed at [315]), is denied. Bonner's motion for reconsideration of the court's ruling on O'Toole's liability for the electronic equipment, [318], is granted in part. Bonner has waived the argument that the police officers stole the equipment, and may not seek damages for the theft under a due-process theory of liability, but may present at trial evidence that the theft was proximately caused by O'Toole's unlawful entry into Bonner's apartment.

## STATEMENT

Sylvester Bonner sued Officer Daniel O'Toole and other "unknown officers" of the Chicago Police Department, as well as the City of Chicago, after a team of officers broke down the door to Bonner's apartment and left his belongings damaged and in disarray while executing a search warrant. Bonner claimed that the warrant was ambiguous as to the place to be searched (the police were looking for an apartment inhabited by a woman named "Shu-Shu"), and so the officers violated Bonner's Fourth Amendment rights by searching his apartment. Bonner also alleged that several items in his apartment—a cellphone, computer, and surround-sound system—were unlawfully seized. In addition to the Fourth Amendment claim (brought under 42 U.S.C. § 1983), Bonner also brought against the officers a civil-conspiracy claim (also under § 1983). Bonner sued the City under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

The City and O'Toole each filed a motion for summary judgment on the claims against them; Bonner cross-moved for summary judgment (on liability only) on all of his claims. Bonner's motion was granted, and O'Toole's denied, as to the unlawful

entry of Bonner's apartment. The warrant did not satisfy the particularity requirement of the Fourth Amendment, and Officer O'Toole should have known of the ambiguity based on recent searches at the same apartment complex. As for the disappearance of the electronic equipment, I determined that Bonner was no longer asserting the police had stolen those items, and awarded summary judgment to O'Toole.

Neither Bonner nor O'Toole was granted summary judgment on the civil-conspiracy claim. Although both parties had moved for judgment on that claim, neither had argued it. The City of Chicago, however, did argue against liability on the civil-conspiracy claim. Bonner neglected to respond to that argument, and the City's motion was granted on the conspiracy issue. The motion was also granted to as to the City's liability under *Monell* for O'Toole's Fourth Amendment violation. The unknown-officer defendants, whose identities were still unknown at summary judgment, were dismissed from the case.

I requested supplemental briefing from O'Toole and Bonner on the conspiracy claim, limited to the facts set out in the parties' existing Local Rule 56.1 statements. Bonner's motion for reconsideration of this request, [315], was denied. [317].[1] Bonner filed a second motion for reconsideration under Federal Rule of Civil Procedure 54(b), seeking revision of the court's ruling that Bonner could not recover under Section 1983 for the theft of his electronic equipment (or, in the alternative, seeking leave to amend his complaint). [318].

*The Conspiracy Claim*

A conspiracy is a combination of two or more individuals, acting in concert to commit an unlawful act. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)). To establish conspiracy liability under Section 1983, the plaintiff must show: (1) that the individuals reached an agreement to deprive him of his constitutional rights; and (2) overt acts in furtherance of that agreement that actually deprived him of those rights. *Id.* (citing *Scherer*, 840 F.2d at 442). Circumstantial evidence may be used to demonstrate a conspiracy, "but such evidence cannot be speculative." *Id.* at 511 (citing *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)).

O'Toole argues in his supplemental summary-judgment brief that the conspiracy claim must fail because, at this point in the litigation, he is the only

---

[1] Citations to the record are designated by the document number as reflected on the district court's docket, enclosed in brackets; referenced page numbers are from the CM/ECF header placed at the top of filings.

defendant left in the case. O'Toole cannot have conspired with himself. *See Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 966 (7th Cir. 1996) ("[T]here can be no conspiracy of one.") But that is not what Bonner is claiming. Bonner claims that O'Toole conspired with the other officers who searched Bonner's apartment. That those other officers are no longer parties to the suit is immaterial. To prevail on a conspiracy claim against O'Toole, Bonner must show only that O'Toole reached an agreement with one or more persons to violate Bonner's rights, and overt acts in furtherance of that agreement. If O'Toole entered into a conspiracy, he is responsible for others' acts within the scope of the agreement. *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

O'Toole argues next that there cannot have been an agreement to violate Bonner's constitutional rights, because the officers did not know that the apartment they were about to search was his. The officers thought the apartment belonged to a woman named "Shu-Shu," since it was she, and not Bonner, who was the target of the warrant. This argument, too, is unavailing. As explained in the earlier order on the motions for summary judgment, warrants cannot be executed by persons who know them to be ambiguous. *See* [295] at 23–24. To the extent O'Toole agreed with another officer to execute an ambiguous search warrant, he agreed to violate the rights of whoever lived in the location searched. This person was Bonner.

O'Toole is correct, however, that Bonner has not presented evidence from which it may be inferred that O'Toole reached an agreement with another officer to execute an ambiguous warrant. Bonner says that such an agreement was reached at the "pre-raid meeting" on February 12, 2010. It was at this meeting that O'Toole and another officer, Sergeant Stec, briefed the search-team members about the warrant to search "[t]he entire 1st floor apartment" at 4929 W. Adams, and conveyed to the officers information obtained from a police informant (*i.e.*, that "Shu-Shu's" apartment was the first door on the right after entering the building). *See* [283] at 14 ¶¶ 40, 44; [297-8]. At least some members of the search team, along with O'Toole and Sergeant Stec, had already searched another apartment at the same complex a few weeks before. *See* [283] at 14 ¶ 43; [291] at 6–7 ¶ 21. According to the warrant for that apartment, it was also a "first-floor" unit. *See* [279-6]. But the officers had climbed a flight of stairs in order to reach it. *See* [291] at 7 ¶ 22.

These facts fall short of demonstrating the kind of agreement necessary to suggest collusion by Officer O'Toole. Perhaps some of the officers at the pre-raid meeting recalled having searched, in the same complex, an above-ground "first-floor" apartment several weeks prior. It is at least possible, then, that those same officers wondered if the "first-floor" descriptor in the February 12 warrant was accurate, given that the February 12 warrant, if based on the informant's description, was in theory targeting a ground-floor unit. But there is no evidence of an understanding

*with O'Toole* about the warrant's flaws—and thus no evidence of an agreement to knowingly execute a defective warrant. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011) (requiring, for proof of a civil conspiracy, "evidence that would permit a reasonable jury to conclude that *a meeting of the minds* had occurred") (emphasis added) (citation omitted). Bonner's evidence of an unlawful agreement at the pre-raid meeting is purely speculative, and that is not enough to defeat summary judgment on the conspiracy claim.

If no agreement was reached at the pre-raid meeting, says Bonner, then one was formed after the search team arrived at the apartment complex—at which point, he argues, the officers would have realized that the warrant was too vague. Bonner claims that the letters "BA" were affixed to his front door, indicating a basement-level (not first-level) apartment, and notes that there was a second apartment door across from his own—suggesting that the warrant's reference to "[t]he entire 1st floor apartment" was overbroad. *See* [291] at 5–6 ¶ 19. Also, says Bonner, there were too many doorbells on the outside of the building, and too many mailboxes in the entryway, for there to have been just one unit per floor. *See id.* at 5 ¶¶ 17–18. O'Toole contends that none of the officers saw the doorbells and mailboxes or the second apartment door, and disputes that the letters on Bonner's own door were actually present on February 12, 2010. *See id.* at 5–6 ¶¶ 17–19. Even assuming that the letters were there, and that someone on the search team spotted them (or saw other indicia of the warrant's possible vagueness), that is not enough to show a conspiracy with Officer O'Toole. For a reasonable juror to conclude that O'Toole agreed with another officer to execute an imprecise warrant, there must be evidence of a meeting of the minds about the ambiguity. Here there is none. We are left instead with conjecture, an inadequate substitute.

The conspiracy claim is superfluous in any event. In the typical case, conspiracy claims matter only with respect to private-actor defendants, because state actors, like O'Toole, may be sued directly under Section 1983. *See Logan v. Wilkins*, 644 F.3d 577, 583 n. 1 (7th Cir. 2011); *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *cf. Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) (discussing conspiracy claims under 42 U.S.C. § 1985(3)); *Scott v. City of Chicago*, — F. App'x —, No. 15-1281, 2015 WL 6688043, at *1 (7th Cir. Nov. 2, 2015) ("All of the defendants in this suit . . . are public employees . . . , which means that a conspiracy claim has no role to play." (citing *Fairley*, 578 F.3d at 526)). O'Toole's liability under Section 1983 has already been determined, and, as stated in the court's earlier order, he is liable to Bonner for any damages caused by the execution of the February 12, 2010 warrant. *See* [295] at 24. To the extent Bonner seeks to establish the same liability through a conspiracy claim, that claim is duplicative. Bonner may have but one recovery for his injuries. *See Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015).

For the reasons discussed above, O'Toole's motion for summary judgment on the civil-conspiracy claim (Count VI) is granted. Bonner's cross-motion on that claim is denied.

*Bonner's Motion for Reconsideration*

Bonner has also filed a motion under Federal Rule of Civil Procedure 54(b), seeking reconsideration of the April 3, 2015 ruling that Bonner cannot recover for the theft of his electronic equipment. I determined that Bonner could not recover from O'Toole any damages for the theft of these items because: (1) Bonner was no longer contending that the police officers removed the electronics items from his apartment (and seizures by private individuals generally are not covered by the Fourth Amendment); and (2) the theft of the items by a third party was not a foreseeable consequence of the unlawful entry. *See* [295] at 26–27.

O'Toole argues that the motion must be denied as untimely because it is governed by Rule 59(e), which imposes a 28-day filing window—a window that Bonner missed. Rule 59(e) applies to motions to "alter or amend a judgment." Fed. R. Civ. P. 59(e). But partial summary judgment (and that is what the court's earlier ruling was, as only liability was decided) is not a final entry of "judgment" within the meaning of Rule 59. *See Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 990 F.2d 342, 346 (7th Cir. 1993) (citing 10A Charles A. Wright, et al., Federal Practice and Procedure § 2737, at 455–56 (2d ed. 1983); *Minority Police Officers Ass'n of South Bend v. City of South Bend, Ind.*, 721 F.2d 197, 200 (7th cir. 1983)). Bonner's motion may properly be considered under Rule 54(b). *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

Bonner argues first that the court erred in concluding he had abandoned his Fourth Amendment claim that the police officers took his electronics. Bonner says that what he alleged in Count V of his complaint, and the facts he included in his Local Rule 56.1 statement at summary judgment, implied *either* that the police took the equipment or that someone else did as a result of the officers' failure to properly secure Bonner's door after their search. *See* [318] at 2–4. What Bonner alleged in his complaint is of little consequence at this stage of the case, as it is now the evidence that counts. *See Whitman v. Nesic*, 368 F.3d 931, 933–34 (7th Cir. 2004) (explaining that a plaintiff may not rest on his pleadings at the summary-judgment stage); *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (observing that summary judgment is "the 'put up or shut up' moment in litigation, [when] the non-moving party is required to marshal and present the court with the evidence [he] contends will prove [his] case") (citations omitted). Bonner says he presented

evidence that could have been interpreted to support either theory of liability.[2] But in response to O'Toole's motion for summary judgment, Bonner made clear which theory he was relying on—and it wasn't that the police had stolen the equipment themselves.

O'Toole had argued, "As to property taken from BONNER's apartment, there is no evidence of O'TOOLE, or any officer for that matter, removing items from BONNER's residence. [266] at 14. Bonner in turn argued:

> In performing a "thorough" search [of Bonner's apartment], O'Toole strew plaintiff's personal belongings, clothes, and food all over the apartment. Furthermore, *O'Toole left the apartment unsecured and, as a result, plaintiff's computer, cell phone, and sound system were stolen.*
>
> O'Toole cannot blame others who may have taken plaintiff's computer, cell phone, and sound system, in that it was his illegal conduct that caused the loss.

[277] at 16 (emphasis added). Nowhere in Bonner's brief did he respond to the argument that there is no evidence of the police taking the equipment. *See also* Plaintiff's Response to Defendant Daniel O'Toole's Statement of Undisputed Material Facts, Local Rule 56.1, [283] at 30 ¶ 96 (O'Toole wrote, "Nothing was taken out of the apartment by any officers and nobody tore open any clothing. [Citation to exhibits.]." Bonner responded, "a) *After the police left*, Michael Dudley, the maintenance man, took measurements of the door to Mr. Bonner's apartment and then left to go to his shop across the alley to cut the boards to board up the door. [Citations.] b) *With the door unlocked, it would only take a couple of minutes for someone to steal things from the apartment.* [Citations.] c) When Sylvester Bonner came home, he found the front door broken and boarded up, his personal belongings in disarray, the lining of his fur coats cut as if the police were looking for drugs, and his computer, sound system, and cell phone missing. [Citations.]") (emphases added). Bonner has waived the issue. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

---

[2] Bonner highlights certain statements of fact from his Rule 56.1 submission. *See* [318] at 3 (asserting that the apartment was left without a lockable front floor, there were no photographs taken of the search, the maintenance man left the apartment unlocked for some time after the police left, and O'Toole later admitted that the police searched the wrong apartment but denied that anything was missing; O'Toole also said the police had pictures to prove that nothing was missing) (citing [278] at 13–14 ¶¶ 75–81). These facts do not support an inference that the police took the electronics.

However, Bonner's second argument for reconsideration—that I should not have granted judgment to O'Toole on the basis of causation—is well-taken. I determined in the earlier ruling that Bonner could not recover damages for the stolen electronics because their theft was not a foreseeable consequence of O'Toole's unlawful entry into Bonner's apartment. But O'Toole never addressed whether the theft was proximately caused by his unconstitutional conduct, and though Bonner did address this, his analysis was a cursory one. *See* [277] at 17. Thus, while it was proper to deny Bonner's motion as to O'Toole's liability for the stolen items, O'Toole was not entitled to judgment. Bonner should be afforded another opportunity to marshal evidence on this point. *See Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 602–05 (7th Cir. 2015).[3] Bonner's motion for reconsideration is therefore granted in part: Bonner may present to the jury evidence concerning who proximately caused the theft of the electronic equipment.

Bonner may not, however, seek damages for the stolen equipment based on a due-process theory of liability. He cites *Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 809 (7th Cir. 2014), for the proposition that he may, but his reliance on *Whitaker* is misplaced. In that case, the plaintiff had presented in opposition to summary judgment a new theory of legal liability, but was precluded by the district court from relying on it. *See* 772 F.3d at 807. The Seventh Circuit determined that the plaintiff should have been allowed to argue her new theory at the summary-judgment stage, because it was based on the same fundamental facts as those alleged in her complaint. *See id.* at 808–09. *Whitaker* is inapposite here: even if Bonner's due-process theory ultimately stems from facts set forth in his original pleading, he did not present that new theory at summary judgment. He instead waited to raise the issue until after the summary-judgment motions had been resolved. This was too

---

[3] Bonner argues that the court should not have addressed causation at all, because causation is a damages issue, and Bonner moved for summary judgment only on liability. *See* [318] at 10. Bonner is not quite correct. Causation may sometimes be addressed at the damages stage of the litigation. *See, e.g., Guzman v. City of Chicago*, 689 F.3d 740, 745 (7th Cir. 2012); *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012) ("Because a plaintiff must ordinarily prove damages, [a] defaulting party may raise the issue of causation as it relates to the calculation of damages.") (citation omitted). But causation may also inform a determination of liability. *See Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) (explaining, in addressing qualified immunity for an alleged due-process violation, that "[c]ausation is a standard element of tort liability"); *see also Belbachir v. County of McHenry*, 726 F.3d 975, 982 (7th Cir. 2013) (stating that causation is "an elementary requirement of liability"); *United States v. King-Vassel*, 728 F.3d 707, 714 (7th Cir. 2013) ("[A]n action that breaks the chain of causation would relieve a defendant of liability."). That Bonner himself understood causation to be a part of the liability inquiry is demonstrated by his having raised the proximate-cause issue in his motion for summary judgment—which, as Bonner emphasizes here, did not address damages.

late. While Bonner was not required to plead specific legal theories in his complaint, *see id.* at 808, "[t]here must be a point at which a plaintiff makes a commitment to the theory of [his] case," *Thompson v. Boggs*, 33 F.3d 847, 853 (7th Cir. 1994) (citation omitted). Bonner made such a commitment at summary judgment; he may not now, on the eve of trial, inject into the proceedings a claim that he could have asserted all along but did not. *Cf. Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001) (observing that the district court does not abuse its discretion in denying a motion to amend where the plaintiff, "if it had prepared for th[e] litigation with the appropriate foresight," could have included the additional claim in its original complaint). Accordingly, Bonner's alternative request for leave to amend his complaint to include a due-process claim, *see* [318] at 13, is denied.

ENTER:

Date:   11/17/15

Manish S. Shah
U.S. District Judge